UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| CARRIE ANN PAUL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:17-cv-00235-MJD-WTL |
| | ) |
| NANCY A. BERRYHILL, | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Carrie Ann Paul ("Paul") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3)(A). For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

**I.**  **Background**

Paul filed an application for Supplemental Security Income ("SSI") on March 14, 2013, alleging an onset of disability date of January 1, 2001. [Dkt. 17-5 at 2.] Paul later amended her onset date to February 1, 2013. [Dkt. 17-2 at 10.] Paul alleges disability due to remote spinal fusion from 1983 with lumbar spondylolisthesis, scoliosis, schizoaffective disorder, seizure disorder, anxiety and polysubstance dependence.[1] [Dkt. 17-2 at 12.] Paul's application was initially denied on July 10, 2013, and denied again on September 19, 2013, upon reconsideration.

---

[1] Paul and the Commissioner recited the relevant factual and medical background in more detail in their opening briefs. [*See* Dkt. 21 and Dkt. 22.] Because these facts involve Paul's confidential and otherwise sensitive medical information, the Court will incorporate by reference the factual background in the parties' briefs but will articulate specific facts as needed below.

[Dkt. 17-4 at 5–17.] Paul timely filed a written request for a hearing, which was held on June 11, 2015, before Administrative Law Judge Mario G. Silva ("ALJ"). [Dkt. 17-4 at 35.] The ALJ issued a decision on July 27, 2015, again denying Paul's application for SSI. [Dkt. 17-2 at 7.] On February 23, 2017, the Appeals Council denied Paul's request for review, making the ALJ's decision the final decision for purposes of judicial review. [Dkt. 17-2 at 2.] Paul timely filed her Complaint in this Court on May 23, 2017, which Complaint is now before the Court.

## II. Legal Standard

To be eligible for DIB or SSI, a claimant must have a disability pursuant to 42 U.S.C. § 423.[2] Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a five-step sequential analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three and she is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at

---

[2] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for Disability Insurance Benefits and Supplemental Security Income claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provisions as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

step three and cannot perform her past relevant work but she can perform certain other available work, she is not disabled. 20 C.F.R. § 404.1520. Before proceeding from step three to step four, the ALJ must assess the claimant's residual functional capacity ("RFC"), identifying the claimant's functional limitations and assessing the claimant's remaining capacity for work-related activities. S.S.R. 96-8p.

The ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* This Court may not reweigh the evidence or substitute its judgment for that of the ALJ but may only determine whether substantial evidence supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008) (citing *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (citing *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985); *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984)). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). To be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into his reasoning" and "build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

### III. The ALJ's Decision

The ALJ first determined that Paul had not engaged in substantial gainful activity since February 1, 2013, the alleged onset date. [Dkt. 17-2 at 12.] At step two, the ALJ determined that

Paul "has the following severe impairments: remote spinal fusion from 1983 with lumbar spondylolisthesis; scoliosis; schizoaffective disorder; seizure disorder; anxiety and polysubstance dependence." [Dkt. 17-2 at 12.] However, at step three, the ALJ found that Paul does not have an impairment or combination of impairments that meets or medically equals a listed impairment. [Dkt. 17-2 at 12.] In making this determination, the ALJ considered Listings 1.04 (Disorder of the Spine), 12.03 (Schizophrenia Spectrum and Other Psychotic Disorders), 12.04 (Depressive, Bipolar and Related Disorders), 12.06 (Anxiety and Obsessive-Compulsive Disorders), and 12.09 (Reserved). [Dkt. 17-2 at 12.]

The ALJ next analyzed Paul's residual functional capacity ("RFC"). He concluded that Paul had the RFC to perform a range of light work except:

> [C]laimant could never climb ladders, ropes or scaffolds; never crawl; occasionally climb ramps and stairs; occasionally balance, stoop, kneel and crouch; unable to engage in the operation of foot controls; perform work on even terrain and on nonslippery surfaces; occasional exposure to wetness; avoid all exposure to hazards, such as unprotected heights and dangerous moving mechanical parts; limited to simple, routine repetitive tasks; unable to perform work that requires directing others, abstract thought or planning; limited to simple work related decisions and routine work place changes; the work must be able to be performed at a flexible [pace], such as free of production rate pace, no tandem tasks or team work where one production step is dependent on the prior step and occasional interaction with the public, coworkers and supervisors.

[Dkt. 17-2 at 13–14.] In finding these limitations, the ALJ considered Paul's "symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." [Dkt. 17-2 at 14.] At step four, the ALJ found that Paul had no past relevant work. [Dkt. 17-2 at 18.] The ALJ thus proceeded to step five, at which time he received testimony from the vocational expert indicating that someone with Paul's education, work experience, age, and RFC would be able to perform unskilled light occupations such as housekeeping/cleaner, marker, and routing clerk. [Dkt. 17-2 at 19.] The vocational expert also

indicated that Paul would be able to perform sedentary unskilled occupations such as microfilm document preparer, ampule sealer, and parimutuel ticket checker. [Dkt. 17-2 at 19.] Because these jobs existed in significant numbers in the national economy, the ALJ concluded that Paul was not disabled. [Dkt. 17-2 at 19.]

IV. **Discussion**

Paul asserts the ALJ committed two errors that require remand: (1) the ALJ erred by failing to account for his own findings of moderate limitations in concentration, persistence, or pace in his RFC and in the hypothetical questions that he posed to the vocational expert ("VE"); and (2) the ALJ erred by unreasonably rejecting the opinion of the consultative examiner which supported a more restrictive mental RFC.

**A. Concentration, Persistence, or Pace**

Paul first argues that the ALJ failed to account for his own findings of moderate limitations in concentration, persistence, or pace in his RFC and in the hypothetical questions that he posed to the VE.[3] [Dkt. 21 at 13.] Paul contends that the flawed hypothetical questions led the VE to make "uninformed testimony" about "other jobs" that Paul could perform at Step Five. [Dkt. 21 at 17.] Consequently, because the ALJ relied on the VE's testimony, the ALJ failed to bear his burden of demonstrating "other jobs" that Paul could perform at Step Five. [Dkt. 21 at 17.] The Commissioner responds to Paul's argument by explaining that the ALJ properly relied on the well-articulated narrative of the two State agency psychologists in Section

---

[3] Principally, Paul argues that the ALJ's RFC findings failed to accommodate her concentration-related deficits. The State agency psychologists Drs. Joseph A. Pressner ("Pressner") and F. Kladder ("Kladder") completed the Mental Residual Functional Capacity Assessment ("MRFCA"). [Dkt. 17-3.] In the boxes checked within Section I of the MRFCA, the doctors indicated that Paul had moderate limitations in concentration, persistence, or pace. [Dkt. 17-3 at 22, 35.] The ALJ gave these opinions "great weight." [Dkt. 17-2 at 17.] Paul argues that although the ALJ "found" that Paul had moderate limitations in concentration, persistence, or pace, the ALJ failed to account for these limitations in his RFC findings and in the hypothetical questions posed to the VE.

5

III of the MRFCA, which included a full analysis of all the boxes checked in Section I. [Dkt. 22 at 10-13.]

The agency's Program Operations Manual System ("POMS") identifies the purpose of Section I of the MRFCA and instructs medical consultants to explain their conclusions in narrative format in Section III of the form:

> The purpose of section I ("Summary Conclusion") … is chiefly to have a worksheet to ensure that the psychiatrist or psychologist has considered each of these pertinent mental activities and the claimant's or beneficiary's degree of limitation for sustaining these activities over a normal workday and workweek on an ongoing, appropriate, and independent basis. **It is the narrative** written by the psychiatrist or psychologist **in section III** ("Functional Capacity Assessment")… **that adjudicators are to use as the assessment of RFC**.

POMS DI 25020.010(B)(1), *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0425020010 (last visited Feb. 12, 2018) (emphasis in original). An ALJ shall not ignore the limitations recorded in Section I. *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015). However, when a claimant's capacity to perform an activity is recorded as "moderately limited, "[t]he **degree and extent** of the capacity or **limitation** must be described in narrative form in Section III." POMS DI 24510.063(B)(2), *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0424510063 (last visited Feb. 12, 2018) (emphasis in original). The ALJ may "reasonably rely on the examiner's narrative in Section III, at least where it is not inconsistent with the findings in the Section I worksheet." *Capman v. Colvin*, 617 F. App'x 575, 579 (7th Cir. 2015); *see also Varga*, 794 F.3d at 816 ("An ALJ may rely on a doctor's narrative RFC, rather than the checkboxes, where that narrative adequately encapsulates and translates those worksheet observations.").

In *Capman*, the Seventh Circuit held that the examiner's notations in Section I and Section III were not inconsistent because Section I indicated that Capman had moderate limitations in his ability to complete a day or week of work without interruption while Section III

6

stated that Capman could adequately manage the stress of unskilled tasks. *Id.* The court reasoned that "[a] moderate limitation is not a complete impairment." *Id*. (citing *Roberson v. Astrue*, 481 F.3d 1020, 1024 (8th Cir. 2007)). Moreover, the court held that the ALJ's RFC findings accurately reflected the examiner's assessment by restricting Capman to simple, routine tasks and limited interactions with others because evidence in the record showed that any limitations in concentration, persistence, or pace stemmed from Capman's anxiety attacks, which occurred when he was around other people. *Id.* Thus, the court concluded that the ALJ's RFC findings adequately addressed Capman's limitations in concentration, persistence, or pace. *Id.*

Here, like the examiner's notations in *Capman*, Drs. Pressner and Kladder's (collectively the "Doctors") notations in Section I and Section III are not inconsistent. The Doctors noted in Section I that Paul had moderate limitations in the ability to maintain attention and concentration for extended periods, the ability to carry out detailed instructions, and the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. [Dkt. 17-3 at 22-23, 35-36.] The Doctors stated in Section III that Paul was "cognitively capable of performing simple, repetitive work-life tasks on a sustained basis at a reasonable pace without special considerations." [*Id.*] Section I's indication that Paul was moderately limited in her ability to complete a day or week of work without interruption does not mean that she could not perform her work satisfactorily "at a reasonable pace." As the Seventh Circuit has held, "[a] moderate limitation is not a complete impairment." *Capman*, 617 Fed. App'x at 579. Thus, the ALJ could reasonably rely on the Doctors' narrative in Section III to determine Paul's mental limitations.

In addition, the ALJ's RFC findings and his hypothetical questions posed to the VE accurately reflected the Doctors' assessments. As a general rule, "both the hypothetical posed to

7

the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015) (quoting *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014)). Among the mental limitations that the VE must consider are deficiencies of concentration, persistence, or pace. *Id.* In *Varga v. Colvin*, Dr. Roger Rattan, a state agency psychological consultant, checked boxes in Section I of the MRFCA form that Varga had moderate difficulties in seven areas related to concentration, persistence, or pace.[4] *Id.* at 811, 814. In Section III of the MRFCA form, Dr. Ratta only wrote "See EWS" in the space provided, which referred to an electronic worksheet that was lost by the agency. *Id.* As a result, Dr. Rattan's narrative summary of Varga's mental residual functional capacity was not part of the record before the court. *Id.*

Relying on the checked boxes in Section I, the *Varga* court held that the ALJ failed to address all of Varga's difficulties in the hypothetical question posed to the VE. *Id.* at 814. The court reasoned that a hypothetical stating that a person was capable of performing "simple, routine, and repetitive tasks" only referred to "unskilled work." *Id*. Thus, the terms were unrelated to the question of whether an individual with difficulties maintaining concentration, persistence, or pace can perform such work. *Id.* In addition, the court reasoned that the hypothetical stating that Varga could perform work "free of production paced production requirements, involving only simple work related decisions with few if any work place [sic] changes and no more than occasional interaction with coworkers or supervisors" also failed to account for all of Varga's difficulties, which were related to her diagnosed anxiety and

---

[4] The seven areas include: (1) understanding and remembering detailed instructions; (2) carrying out detailed instruction; (3) maintaining attention and concentration for extended periods; (4) completing a normal workweek without interruption from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; (5) accepting instructions and responding appropriately to criticism from supervisors; (6) getting along with coworkers without distracting them or exhibiting behavioral extremes; and (7) responding appropriately to changes in the work setting. *Id.* at 814.

depression, as well as her physical problems and pain. *Id.* at 815. Specifically, the court stated that:

> 'Few if any work place changes' with limited 'interaction with coworkers or supervisors' deals largely with workplace adaptation, rather than concentration, pace, or persistence. It is also problematic that the ALJ failed to define 'fast paced production.' Without such a definition, it would have been impossible for the VE to assess whether a person with Varga's limitations could maintain the pace proposed.

*Id.*

Here, the facts in this case are distinguishably different from the facts in *Varga*. Unlike Dr. Ratta who did not give a narrative explanation of Varga's mental limitations in Section III of the MRFCA,[5] the Doctors in this case provided a well-articulated narrative explanation of Paul's mental limitations. [Dkt. 17-3 at 22-23; 35-36.] Most importantly, the Court notes that, while Varga had "moderate difficulties" in all seven areas of concentration, persistence, or pace, Paul only had "moderate limitations" in three areas of concentration, persistence, or pace. [*Id.*] As stated above, the ALJ in this case could reasonably rely on the narrative explanation of Paul's mental limitations in Section III in assessing Paul's RFC because the explanation was not inconsistent with the findings stated in Section I. *Cf. Bock v. Berryhill*, 2017 WL 49922756 (S.D. Ind. 2017) (wherein the inconsistency between a finding of moderate limitation in understanding and remembering detailed instructions in Section I and a narrative that indicated claimant could perform semi-skilled tasks warranted remand).

The medical evidence and Paul's testimony support the finding that any limitations in concentration, persistence, or pace stem from Paul's limited ability to sustain concentration for extended periods of time. [*See* Dkt. 17.] Since the Doctors explained that Paul "[was]

---

[5] Dr. Ratta's narrative explanation, if it ever existed, was lost by the agency. *Id.* at 811. Thus, it was not part of the record before the district court or the Seventh Circuit. *Id.*

cognitively capable of performing simple, repetitive work-like tasks on a sustained basis at a reasonable pace without special considerations," it was reasonable for the ALJ to limit Paul's RFC and the hypothetical questions to the VE to "simple, routine, and repetitive tasks" that were "free of production rate pace" and "can be performed at a flexible pace." *See Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) ("We review the ALJ's decision deferentially only to determine if it is supported by 'substantial evidence,' which we have described as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"); *O'Connor–Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010) ("We also have let stand an ALJ's hypothetical omitting the terms 'concentration, persistence and pace' when it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform.").

Paul argues that the ALJ did not actually provide for any limitations to Paul's ability to sustain concentration throughout the work day or clearly define the pace of work she could perform. [Dkt. 21 at 14.] Particularly, Paul maintains that the limitation to "simple, routine, repetitive tasks" did not even address moderate limitations in concentration, persistence, or pace. Paul also argues that "work free of production rate pace" does not clearly define Paul's pace-based limitations. [Dkt. 21 at 14-15.] These arguments are without merit.

First, while a limitation to "simple, routine, repetitive tasks" does not address all possible limitations in concentration, persistence, or pace, this is not the only limitations the ALJ had for Paul. *See Varga*, 794 F.3d at 814–15. Instead, the ALJ went well beyond such a finding and further restricted Paul to:

> [U]nable to perform work that requires directing others, abstract thought or planning; limited to simple work related decisions and routine work place changes; the work must be able to performed at a flexible [pace], such as free of production rate pace, no tandem tasks or team work where one production step is

10

dependent on the prior step and occasional interaction with the public, coworkers and supervisors.

[Dkt. 17-2 at 14.] Thus, as the Commissioner correctly pointed out, Paul's argument that the limitation to "simple, routine, repetitive tasks" did not even address moderate limitations in concentration, persistence, or pace is incorrect. [*See* Dkt. 22 at 14.]

Moreover, unlike the ALJ in *Varga* who failed to define "fast pace production," here, this ALJ clearly defined Paul's pace-based limitations by stating that Paul must be able to work at a flexible pace, "such as free of production rate pace, no tandem tasks or team work where one production step is dependent on the prior step and occasional interaction with the public, coworkers and supervisors." [Dkt. 17-2 at 14.] *See Varga*, 794 F.3d at 812. Furthermore, in the hypothetical questions posed to the VE, the ALJ specifically stated that: "[Paul] does require an allowance for the work that can be performed at a flexible pace and by that I mean free of production rate pace where there are no tandem tasks or teamwork or one production step that's dependent upon the prior step." [Dkt. 17-2 at 51.] Thus, this ALJ addressed the main concern of *Varga*: "that the ALJ failed to define 'fast paced production…' [and without] such a definition, it would have been impossible for the VE to assess whether a person with Varga's limitations could maintain the pace proposed." *Id.* at 815.

Finally, as noted above, in *Varga*, the state agency psychologist's narrative explanation of Varga's mental limitations in Section III was lost by the agency, whereas here, the state agency psychologists gave a well-written narrative explanation of Paul's mental limitations. Per the agency's instruction, "**[i]t is the narrative** written by the psychiatrist or psychologist **in section III** ('Functional Capacity Assessment') … **that adjudicators are to use as the assessment of RFC**." POMS DI 25020.010(B)(1), *available at*

11

https://secure.ssa.gov/apps10/poms.nsf/lnx/0425020010 (last visited Feb. 12, 2018) (emphasis in original). This ALJ correctly followed this instruction.

Accordingly, the Court concludes that the ALJ adequately accounted for Paul's moderate limitations in concentration, persistence, or pace in his RFC's findings and in the hypothetical questions posed to the VE.

### B. Consultative Examiner

Paul next argues that the ALJ committed reversible error when he unreasonably rejected the consultative examiner's ("CE") opinion which supported a more restrictive mental residual functional capacity. "An ALJ can reject an examining physician's opinion for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) (citing *Moore v. Barnhart*, 278 F.3d 920, 924 (9th Cir. 2002)). An ALJ is not required to give controlling weight to the ultimate conclusion of disability by an examining physician because a finding of disability is specifically reserved for the Commissioner. *Denton v. Astrue*, 596 F.3d 419, 424 (7th Cir. 2010); *see also Stevenson v. Colvin*, 654 F. App'x 848, 852–53 (7th Cir. 2016) (statement that claimant was "totally incapacitated to work" did not describe specific limitations and was not a medical opinion entitled to deference).

Here, the ALJ did not err when he decided to give "little weight" to the CE's opinion. On April 29, 2013, Leah A. Powell, PhD., examined Paul for SSI purposes. [Dkt. 17-7.] Dr. Powell concluded that:

> Although [Paul] appears to have average intelligence, she is compromised in managing her mood due to having a mood disorder and specifically Schizoaffective Disorder as well as difficulty managing her anger and her responsibilities in interpersonal relationships. She would benefit from having her medications re-evaluated. She is impulsive, has difficulty making good decisions,

and has difficulty controlling her own behavior. ***These symptoms are contraindicated with work related activities***.

[Dkt. 17-7 at 40 (emphasis added).] The ALJ gave Dr. Powell's opinion "little weight" because it "was based on a one-time examination of the claimant as well as it is vague and not specific in terms of functioning." [Dkt. 17-2 at 17.] The ALJ further noted that Paul "was not consistent with attending her mental health therapy and she continues to be able to take care of a household, including her two children." [*Id.*] As an initial matter, the Court notes that Dr. Powell's opinion that "[Paul's] symptoms are contraindicated with work related activities" is not a medical opinion for SSI purposes. 20 C.F.R. § 404.1527(d) (opinions that a claimant is disabled or other opinions on issues reserved to the Commissioner that would direct the determination or decision of disability are not medical opinions and will not be given any special significance). Thus, the ALJ does not have to give this part of Dr. Powell's opinion any special significance.

In addition, the ALJ properly followed the criteria set forth in § 404.1527 when the ALJ addressed the fact that Dr. Powell saw Paul just once before making her opinions. 20 C.F.R. § 404.1527; *see also Emanuele v. Astrue*, 803 F. Supp. 2d 959, 966 (E.D. Wis. 2011) (The ALJ failed to follow the criteria set forth in § 404.1527 when the ALJ did not address that Dr. Robert Braco, the consultative examiner, only saw Emanuele once). Moreover, a careful review of the record shows that the ALJ properly concluded that Dr. Powell's opinion was "vague and not specific in terms of functioning." [*See* Dkt. 17-2 at 17; Dkt. 17-7.] Dr. Powell concluded that Paul "is impulsive, has difficulty making good decisions, and has difficulty controlling her own behavior." [Dkt. 17-7 at 40.] However, Dr. Powell did not specify the severity of Paul's symptoms nor provide what Paul can still do despite her mental restrictions. *See* 20 C.F.R. § 404.1527(a)(1). In contrast, the State agency psychological consultant specifically opined that Paul was cognitively capable of performing simple, repetitive work-like tasks on a sustained

basis at a reasonable pace without special considerations. [Dkt. 17-2 at 17.] Although the State agency psychological consultant only reviewed Paul's medical records without actually examining her, it is reasonable for the ALJ to give this opinion "great weight" because it specified the severity of Paul's symptoms and provided what she can still do despite her mental restrictions. *See Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014) ("[T]he court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering the facts or the credibility of witnesses.").

To be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into his reasoning" and "build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). It is a "lax" standard. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). As a result, the ALJ met his burden in this case because he adequately articulated his analysis of the evidence in his decision to give Dr. Powell's opinion "little weight."

Paul next argues that if the ALJ "truly needed clarification of [Dr. Powell's] opinion, he could have called and asked, specifically in light of the fact [Dr. Powell] was consulted by his own agency." [Dkt. 21 at 19-20 (citing *Barnett v. Barnhart*, 381 F.3d 664, 669–670 (7th Cir. 2004)).] Courts in this Circuit have held that while this is an option, the ALJ is only required to contact a medical source for clarification when the medical support for a disability decision is not readily discernable. *Dampeer v. Astrue*, 826 F. Supp. 2d 1073, 1083 (N.D. Ill. 2011); *Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009). Here, as stated above, there was medical support for

a disability decision, albeit one that was in conflict with Dr. Powell's opinion. [*See* Dkt. 17-2 at 13-18.] Thus, the ALJ did not have to contact Dr. Powell for clarification.

In addition, Paul argues that Paul's inconsistency in attending her mental health therapy is not relevant to the credibility of Dr. Powell's opinion. [Dkt. 21 at 20.] Paul contends that it is unclear how Paul's regular attendance to therapy may have changed Dr. Powell's observations. [*Id.*] However, even if the ALJ erred in considering this evidence in making his weight determination, any such error would be harmless. Even disregarding the evidence of Paul's inconsistency in attending her mental health therapy, the ALJ articulated other bases sufficient to support the ALJ's decision to give little weight to Dr. Powell's opinion.

Finally, Paul argues that the ALJ's contention that Dr. Powell's opinion should be granted "little weight" because "[Paul] continues to be able to take care of a household, including her two children" fails the logical and accurate explanation test. [Dkt. 21 at 20.] "The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter…." *Hughes v. Astrue*, 705 F.3d 276, 278–79 (7th Cir. 2013). However, an individual's daily activities can be used to illustrate inconsistencies between those activities and the observations of a physician. *Dornseif v. Astrue*, 499 Fed. App'x 598, 600 (7th Cir. 2013) ("Further, the ALJ appropriately observed that [the treating physician's] conclusion that her 'severe debilitating illness' prevented her from standing 'for prolonged periods of time' was undermined by Dornseif's own testimony at the hearing that she could stand (after the knee injury) for three to four hours at her job.").

Here, the fact that Paul was able to continue taking care of her household, including her two children, undermines Dr. Powell's conclusion that Paul had "difficulty managing … her responsibilities in interpersonal relationships." [Dkt. 17-7 at 40.] In addition, as noted above, this

15

is not the only reason the ALJ considered when deciding to give Dr. Powell's opinion "little weight." The ALJ pointed to the vague and conclusive nature of Dr. Powell's statement on an issue reserved to the Commissioner, while favoring the more specific opinions of Drs. Pressner and Kladder. Nonetheless, the ALJ did include further restrictions on his RFC findings based on evidence from Dr. Powell's examination. [Dkt. 17-2 at 17 ("There are also some notations of irritability, mood swings, judgment/insight issues, some stress tolerance problems and pain. The undersigned did limit the claimant further due to such evidence.").] Accordingly, because the ALJ adequately articulated his reasons for giving Dr. Powell's opinion "little weight," this ground cannot serve as a basis for remand.

## V. Conclusion

The standard of review of the Commissioner's denial of benefits is deferential. The Court reviews the record as a whole, but does not re-weigh the evidence or substitute its judgment for the ALJ's. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). The Court must uphold a decision where, as here, it is supported by substantial evidence in the record. As the Court cannot find a legal basis to overturn the ALJ's determination that Paul does not qualify for disability benefits, the Commissioner's decision is **AFFIRMED**.

SO ORDERED.

Dated: 26 MAR 2018

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Jill Z. Julian
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
jill.julian@usdoj.gov

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov

Matthew Frederick Richter
KELLER & KELLER LLP
mrichter@2keller.com

Joseph R. Wambach
KELLER & KELLER
joew@2keller.com